**EUGENE D. ROTH, ESQUIRE - 4239**
**VALLEY PARK EAST**
**2520 HIGHWAY 35, SUITE 307**
**MANASQUAN, NEW JERSEY 08736**
**(732) 292-9288**
**ATTORNEY FOR DEBTOR**

| | |
|---|---|
| IN THE MATTER OF | : UNITED STATES BANKRUPTCY COURT |
| | : FOR THE DISTRICT OF NEW JERSEY |
| NATALIE NEBBLETT, | :   Case No.: 11-27398-RTL |
| | : |
| | :       CHAPTER 11 |
| DEBTOR | : |

**DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY THE DEBTOR, NATALIE M. NEBBLETT**

*PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY. THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THIS PLAN OF REORGANIZATION. THE PLAN PROPONENT BELIEVES THAT THIS PLAN OF REORGANIZATION IS IN THE BEST INTEREST OF THE CREDITORS AND THAT THE PLAN IS FAIR AND EQUITABLE. THE PROPONENT URGES THAT THE VOTER ACCEPT THE PLAN.*

**Proponent: Natalie M. Nebblett**

/s/ *Natalie M. Nebblett*
Natalie M. Nebblett

Dated: 12/05/2011

1

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION................................. | 4-9 |
|  | A. Purpose of This Document...................... | 4-6 |
|  | B. Confirmation Procedures...................... | 6-8 |
|  | 1. Time and Place of the Confirmation hearing. | 7 |
|  | 2. Deadline For Voting For or Against the Plan | 7 |
|  | 3. Deadline For Objecting to the Confirmation of the Plan............................... | 8 |
|  | 4. Identity of Person to Contact for More Information Regarding the Plan............. | 8 |
|  | C. Disclaimer...................................... | 9 |
| II. | BACKGROUND........................................ | 9-12 |
|  | A. Description and history of the Debtor's Business | 9-11 |
|  | B. Principals/Affiliates of Debtor's Business..... | 11 |
|  | C. Management of the Debtor Before and After the Bankruptcy ...................................... | 11 |
|  | D. Events Leading to Chapter 11 Filing........... | 11 |
|  | E. Significant Events During the Bankruptcy........ | 11-12 |
|  | 1. Bankruptcy Proceedings...................... | 11-12 |
|  | 2. Other Legal Proceedings...................... | 12 |
|  | 3. Actual and Projected Recovery of Preferential Or Fraudulent Transfers...................... | 12 |
|  | 4. Procedures Implemented to Resolve Financial Problems.................................... | 12 |
|  | 5. Current and Historical Financial Conditions. | 12 |
| III. | SUMMARY OF THE PLAN OF REORGANIZATION................. | 13-22 |
|  | A. What Creditors and Interest Holders Will Receive Under the Proposed Plan........................... | 13 |
|  | B. Unclassified Claims............................. | 13-16 |
|  | 1. Administrative Expenses and Fees........... | 13-15 |
|  | 2. Priority Tax Claims......................... | 15-16 |
|  | C. Classified Claims and Interests................. | 16-19 |
|  | 1. Classes of Secured Claims................... | 16-18 |
|  | 2. Classes of Priority Unsecured Claims........ | 18 |
|  | 3. Class of General Unsecured Claims.......... | 18-19 |
|  | 4. Class(es) of Interest Holders.............. | 19-20 |
|  | D. Means of Effectuating the Plan.................. | 20 |
|  | 1. Funding for the Plan........................ | 20 |
|  | 2. Post-Confirmation Management................ | 20 |
|  | 3. Disbursing Agent........................... | 20 |
|  | E. Other Provisions of the Plan................... | 20-21 |
|  | 1. Executory Contracts and Unexpired Leases.. | 20-21 |
|  | 2. Changes in Rates Subject to Regulatory |  |

           Commission Approval......................... 21
    3.   Retention of Jurisdiction................... 21
    4.   Procedures for Resolving Contested Claims... 21
    5.   Effective Date.............................. 21
    6.   Modification................................ 21
  F.   Tax Consequences of Plan...................... 21-22
  G.   Risk Factors.................................. 21-22

IV.  CONFIRMATION REQUIREMENTS AND PROCEDURES.............22-31
  A.   Who May Vote or Object........................23-27
    1.   Who May Object to Confirmation of the Plan.. 23
    2.   Who May Vote to Accept/Reject the Plan.... 23-25
       a.   What Is an Allowed Claim/Interest.....23-24
       b.   What is an Impaired Claim/Interest....24-25
    3.   Who Is Not Entitled to Vote................. 25
    4.   Who Can Vote In More Than One Class......... 26
    5.   Votes Necessary to Confirm the Plan......... 26
    6.   Votes Necessary for a Class to Accept the
       Plan........................................ 26
    7.   Treatment of Nonaccepting Classes..........26-27
    8.   Request for the Confirmation Despite
       Non-acceptance by Impaired Class(es)........ 27
  B.   Liquidation Analysis...........................27-29
  C.   Feasibility....................................30-31

V.  EFFECT OF CONFIRMATION OF PLAN.......................31-33
  A.   Discharge..................................... 31
  B.   Revesting of Property in the Debtor............. 31
  C.   Modification of Plan.......................... 32
  D.   Post-Confirmation Conversion/Dismissal..........32-33

**I.**

**INTRODUCTION**

Natalie M. Nebblett is the Debtor in this Chapter 11 bankruptcy case ("Nebblett"). On June 6, 2011, the Debtor commenced a bankruptcy case by filing a voluntary Chapter 11 case under the United States Bankruptcy Code ("Code"), 11 USC 101, et seq. Chapter 11 of the Code allows the Debtor, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization ("Plan"). The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. The Debtor is the party proposing the Plan sent to you in the same envelope as this document. **THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE PLAN, WHICH IS ANNEXED HERETO AS EXHIBIT A.**

This is a Reorganization Plan. In other words, the Proponent seeks to reorganize his debts by making payments under the Plan, which are to be generated from future earnings. The Effective Date of the proposed Plan is the date on which the Order of Confirmation becomes final.

**A.    Purpose of this Document**

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to

4

confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

**(1)  WHO CAN VOTE OR OBJECT**

**(2)  THE PROPOSED TREATMENT OF YOUR CLAIM (i.e., what your Claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOU WOULD RECEIVE IN LIQUIDATION,**

**(3)  THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

**(4)  WHAT THE COURT WILL CONSIDER WHEN DECIDING WHETHER TO CONFIRM THE PLAN,**

**(5)  THE EFFECT OF CONFIRMATION, AND**

**(6)  THE FEASIBITY OF THE PLAN.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting a lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

Code Section 1125 requires a Disclosure Statement to contain "adequate information" concerning the Plan. The term "adequate

information" is defined in Code Section 1125(a) as "information of a kind, and in sufficient detail," about the Debtor and its operations "that would enable a hypothetical reasonable investor typical of holders of claims or interests" of the Debtor to make an informed judgment about accepting or rejecting the Plan. The Bankruptcy Court has determined that the information contained in this Disclosure Statement is adequate, and it has approved this document in accordance with Code Section 1124. An Order Approving

This Disclosure Statement is provided to each creditor whose claim has been scheduled by the Debtor or who has filed a proof of claim against the Debtor and to each interest holder of record as of the date of approval of this Disclosure Statement. Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to or concurrently with such solicitation.

**B.   Confirmation Procedures**

**Persons Potentially Eligible to Vote on the Plan**

In determining acceptance of the Plan, votes will only be counted if submitted by a creditor whose claim is duly scheduled by the Debtor as undisputed, non-contingent and unliquidated, or who, prior to the hearing on confirmation of the Plan, has filed with the Court a proof of claim which has not been disallowed or suspended prior to computation of the votes on the Plan. All shareholders of record as of the date of approval of this

Disclosure Statement may vote on the Plan. The Ballot Form that you receive does not constitute a proof of claim. If you are uncertain whether your claim has been correctly scheduled, you should check the Debtor's Schedules, which are on file at the office of the Clerk of the Bankruptcy Court located at: **United States Bankruptcy Court, US Courthouse, 402 East State Street, Trenton, New Jersey 08608-1507**. The Clerk of the Bankruptcy Court will not provide this information by telephone.

**THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.**

**1.    Time and Place of the Confirmation Hearing**

The Hearing at which the Court will determine whether to confirm the Plan will take place on                    , at {am/pm}, in Courtroom      ,United States Bankruptcy Court, 402 East State Street, Trenton, New Jersey 08608-1507.

**2.    Deadline for Voting For or Against the Plan**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to the United States Bankruptcy Court Clerk, 402 East State Street, Trenton, New Jersey 08608-1507, with a copy to:

7

**Eugene D. Roth, Esq., Valley Park East, 2520 Highway 35, Suite 307, Manasquan, NJ 08736.**

Your ballot must be received by the time set forth in the Court Order approving the Disclosure Statement or it will not be counted.

**3.   Deadline for Objecting to the Confirmation of the Plan**

Objections to the Confirmation of the Plan must be filed with the Court and served upon Eugene D. Roth, Esq. by the time set forth in the Court Order approving the Disclosure Statement.

**4.   Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact **Eugene D. Roth, Esq., Valley Park East, 2520 Highway 35, Suite 307, Manasquan, NJ 08736.**

**C.   Disclaimer**

The financial data relied upon in formulating the Plan is based on the Proponent's books, records and representations. The information contained in the Disclosure Statement is provided by the Proponent. The Plan Proponent represents that everything stated in the Disclosure Statement is true to the Proponent's best knowledge.

*PLEASE NOTE THAT THE APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A RULING ON THE MERITS, FEASIBILITY OR DESIRABILITY OF THE PLAN.*

## II.
### BACKGROUND

**A. Description and History of the Debtor's Business.**

As is the case with many other hard working Americans, I now unfortunately find myself in financial difficulty. The genesis of my current predicament dates back to 2008, when I graduated from post graduate studies as an orthodontist with excessive student loans. I was not born into a wealthy family and therefore the only avenue available to me to advance my situation was to borrow money to pay for my higher education. Prior to graduation I was approached by a finance company by the name of Choice Health Leasing ("Choice Health") at a seminar that promised to assist me in opening a practice. I had little to no financial training or background and was advised that they were the experts and would be acting in my best interests in helping my dream of being in private practice become a reality. They assured me that they would supervise the effort from start to finish; that the repayment schedule for the loan would be something that I would be able to manage from the income derived from the practice; and that until the practice was up and running that payments would be deferred. I naively believed them. The next step for me was to

find suitable office space in the Monmouth County area. I located

an attractive professional building that was located in proximity

to Jersey Shore Medical Center in Neptune, New Jersey which I

felt would be a significant source of referrals.

Choice Health designed the space and sold me equipment and

furniture that they insisted I needed, which was purchased from a

company they were affiliated with by the name of Henry Schein

Dental ("HSD"), and we began our efforts to adapt the space to

accommodate an orthodontic practice. I was informed that the

professional office building was owned by a Mr. Solomon Dwek. Mr.

Dwek's legal problems, which I was totally unaware of at the

time, later came to light and prevented me from ever opening the

office. The building was the subject of a seizure and I was

locked out of the space and never able to retrieve any personal

property afterwards. Choice Health refused to assist me as they

had promised to do, and instead began generating bills and

demanding payment contrary what had been represented to me during

prior discussions. My loans with Choice Health were then

transferred to GE Capital Corp. ("GE Capital") and things went

from bad to worse.

I had initially hoped that now that Choice Health was out of

the picture that some resolution of my problems could be

accomplished with GE Capital. I spoke with their representative

and related the unfortunate history of the matter and also

10

informed them that I was being billed for items that I had never approved the purchase of from HSN and for services that were never performed. They refused to honor the commitment made by Choice Health in regard to deferment of payments, or to provide me with any credit against the amount due for the machinery and equipment that was never approved or delivered as well as the services that were never performed. I was informed that if I did not pay what they demanded, with their substantial resources, they would file a law suit against me and cause the defense of such action to be prohibitively expensive for someone such as myself, who was just starting out as a professional. True to form their lawyers have harassed me at work; sent their agents to my home who verbally abused me in front of my young children; and whom even after the filing of this voluntary bankruptcy and the imposition of the Automatic Stay contacted me by phone in violation of such stay. I attempted to defend the action filed by GE Capital with the Superior Court of New Jersey, Law Division, Monmouth County, under Docket No. MON-L-005891-10 ("State Court action"), but eventually I could not afford to fund the litigation and therefore an Order Granting Summary Judgment was entered on March 18, 2011 against me in the amount of $405,148.53. The Summary Judgment motion was unopposed and the judgment entered did not credit me with anything against the total claim asserted by GE Capital, despite the fact that, as

stated previously, machinery and equipment was never received and services were never provided. To this date, GE Capital has failed to credit me with the fair market value of such machinery and equipment in their proof of claim filed with this Court even though I have entered into a Consent Order with them allowing them to retrieve and resell the collateral.

I regret the fact that I learned too late that I was not the only person victimized by GE Capital's unscrupulous tactics.  The internet is littered with innumerable shocking consumer complaints against GE Capital in its many forms. Thousands of complaints have been lodged against GE Capital, so much so that in 2010 the then Attorney General Andrew Cuomo launched an investigation into GE Capital's "Predatory Healthcare Lending That is Pushing Consumers Nationwide into Debt." He is quoted as saying, "People are being tricked by misleading offers that have them paying for services they never received as well as interest charges they never knew about."

In 2009, during the State Court litigation, I was wrongfully named as a defendant in a civil lawsuit filed with the Superior Court of New Jersey, Chancery Division, Monmouth County, Family Part by Ms. Judith Ann Sherman against her husband Gerald M. Sherman under Docket No. FM-13-873-10B. The claims against me in that matter are totally frivolous, but caused me to incur additional legal fees which once again I could not sustain.

Even though I am a health care provider I have no employer based health coverage, but do maintain my own basic health insurance. In 2010 I happily became pregnant, but sadly my insurance did not cover many of the required doctor visits and prenatal testing. I incurred significant medical bills in connection with my pregnancy and was hospitalized for a week following an emergency Caesarian Section. After the surgery I was placed on temporary disability for a six (6) week period. At the time, I had no employer paid sick or vacation time, nor any maternity leave available to me and therefore went without any source of income for approximately two (2) months.

Finally, in 2011 the Internal Revenue Service ("IRS") garnished my wages. The IRS somehow calculated that that they were able to take all but $900.00 per month of my income based on my family size. This was truly the last straw and the culmination of nearly three (3) years of financial distress. The GE Capital and Judith Sherman lawsuits, together with the disastrous experience I encountered with attempting to set up a private practice, my medical bills and IRS garnishment resulted in a financial mess that I could not extricate myself from and caused me to have to file for bankruptcy protection.

I am currently working extremely long hours and have been successful in generating a rather significant income. I am confident that I will be able to achieve even more in the future

13

and, as is demonstrated in the financial projections that
accompany this filing, be in position to be able to pay back a
considerable portion of my legitimate debt if my Chapter 11 Plan
of Reorganization is approved.

**B. Principals/Affiliates of Debtor's Business**

N/A; the Debtor is an individual.

**C. Management of the Debtors Before and After the Bankruptcy**

N/A; the Debtor is an individual.

**D. Events Leading to Chapter 11 Filing**

See Article II A above.

**E. Significant Events during the Bankruptcy**

**1. Bankruptcy Proceedings**

The following is a chronological list of significant events
which have occurred during this case:

- Date Petition Filed: 06/06/2011

- Order for Retention of Counsel: 06/30/2011

- Order Determining Appointment of Ombudsman as Not
  Necessary: 07/28/2011

- Meeting of Creditors: 08/18/2011

- Order Granting Debtors Motion to Extend Exclusivity
  Period for Filing Chapter 11 Plan and Disclosure
  Statement: 11/01/2011

- Consent Order Vacating Stay as to GE Capital Corp:
  11/07/2011

- Application to Retain Accountant: 12/04/2011

14

The Court has approved the employment of the following professionals:

Law Office of Eugene D. Roth, counsel for the Debtor;

- Currently, the following significant adversary proceedings and motions are still pending: GE Capital Corporation v. Natalie M. Neblett et al; Adv. Pro. No.11-02587

**2. Other Legal Proceedings**

In addition to the proceedings discussed above, the Debtor is currently involved in the following non-bankruptcy legal proceedings: N/A

**3. Actual and Projected Recovery of Preferential or Fraudulent Transfers:** N/A

**4. Procedures Implemented to Resolve Financial Problems**

In an effort to remedy the problems that led to the bankruptcy filing, Debtor has implemented the following procedures:

- Reduced personal expenses;

- Discontinued working as independent contractor; and

- Now employed in two positions by two different employers as Orthodontist;

**5. Current and Historical Financial Conditions**

See Article II A above.

**III.**

**SUMMARY OF THE PLAN OF REORGANIZATION**

**A.   What Creditors and Interest Holders Will Receive Under the Proposed Plan**

15

The Plan classifies claims and interests in various classes. The Plan states whether each class of claims or interest is impaired or unimpaired. The Plan provides the treatment each class will receive.

## B.   Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has placed the following claims in a class:  N/A

### 1.   Administrative Expenses and Fees

Administrative expenses are claims for fees, costs or expenses of administering the Debtor's Chapter 11 case, which are allowed under Code Section 507(a)(1), including all professional compensation requests pursuant to Sections 330 and 331 of the Code. The Code requires that all administrative expenses including fees payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee, which were incurred during the pendency of the case, must be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's unpaid administrative fees and expenses ("Compensation"), an estimate of

future professional fees and other administrative claims and fees
and their treatment under the Plan:

| NAME | AMOUNT ESTIMATED | TREATMENT | TYPE OF CLAIM |
|---|---|---|---|
| Eugene D. Roth, Esq. | $35,000.00 - $45,000.00 | Paid in full on Effective Date | Attorney's fees |
| Office of U.S. Trustee Fees | undetermined | Paid in full on Effective Date | Administrative Fees |
| | **TOTAL** $35,000.00 - $45,000.00 | | |

**Court Approval of Professional Compensation Required:**

Pursuant to the Bankruptcy Code, the Court must rule on all
professional compensation and expenses listed in this chart
before the compensation and expenses will be owed. The
professional in question must file and serve a properly noticed
fee application for compensation and reimbursement of expenses
and the Court must rule on the application. Only the amount of
compensation and reimbursement of expenses allowed by the Court
will be owed and required to be paid under this Plan as an
administrative claim.

Each professional person who asserts a further
administrative claim that occurs before the confirmation date
shall file with the Bankruptcy Court, and serve on all parties
required to receive notice, an application for compensation and
reimbursement of expenses no later than thirty (30) days after
the Effective Date of the Plan. Failure to file such an

17

application timely shall result in the professional person's claim being forever barred and discharged. Each and every other person asserting an administrative claim shall be entitled to file a motion for allowance of the asserted administrative claim within ninety (90) days of the Effective Date of the Plan, or such administrative claim shall deemed forever barred and discharged. No motion or application is required to fix the fees payable to the Clerk's Office or Office of the United States Trustee. Such fees are determined by statute.

As indicated above, the Debtor will need to pay administrative claims and fees on the Effective Date of the Plan unless a claimant has agreed to be paid later or the Court has not yet ruled on the claim.

**2.   Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires that each holder of such a 507(a)(8) priority tax claim receives the present value of such claim in deferred cash payments, over a period not exceeding five (5) years from Order for Relief.

The following chart lists all of the Debtor's Section 507(a)(8) priority tax claims and their treatment under the Plan:

| DESCRIPTION | AMOUNT OWED | TREATMENT |
|---|---|---|
| Internal Revenue Service | $73,216.76 | The priority claim of the Internal Revenue Service will be paid in full over a term ending no later than June 2016.  The Debtor approximates monthly payments of one thousand three hundred and fifty five dollars and eighty seven cents ($1,355.87) over the term. |

## C.    Classified Claims and Interests

### 1.    Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate. The following represent all classes containing Debtor's secured pre-petition claims and their treatment under this Plan:

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | **Secured Claim of:** Capital One secured by a mortgage on Debtor's residence at 3 Geraldine Court, Farmingdale, NJ 07727 | N | N | Payments to continue in accordance with the Mortgage Note the month subsequent to the Effective Date. |
| 2 | **Secured Claim of:** Nissan Motor Acceptance secured by an Auto Loan on Debtor's 2011 Nissan Pathfinder | N | Y | The secured claim of Nissan Motor Acceptance will be crammed down to $10,000.00, which amount will be paid over a five (5) year term in monthly installment payments of $185.30 commencing on the month after |

19

| | | | | |
|---|---|---|---|---|
| | | | | the effective date. The balance of claim of $4,841.11 shall be reclassified as a General Unsecured Claim and paid in accordance with the treatment afforded Class 4 creditors. |
| 3 | **Secured Claim of:** Ally Financial, secured by an auto loan on Debtor's 2008 Volvo S80 | **N** | **N** | Payments to continue in accordance the Auto Loan agreement. |
| 4 | **Secured Claim of:** GE Capital, secured by a UCC-1 Financing Statement on Debtor's Dental Equipment | **N** | **Y** | The secured claim of GE Capital will be partially paid through the surrender of the collateral. The balance of claim of $440,047.47 shall be reclassified as a General Unsecured Claim and paid in accordance with the treatment afforded Class 5 creditors. |

## 2.   Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Code

Sections 507(a)(3), (4), (5), (6), and (7) are required to be

placed in classes. These types of claims are entitled to priority

treatment.

The Code requires that each holder of such a claim receive

cash on the Effective Date equal to the allowed amount of such

claim. However, a class of unsecured priority claim holders may

vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

The following chart lists all classes containing Debtor's 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7) priority unsecured claims and their treatment under this Plan:

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| | N/A | | |

### 3.   Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a). The following chart identifies this Plan's treatment of these Claims are to be treated as follows:

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5 | General Unsecured Claims Total amount of claims- $1,000,421 | Y | Payment in the amount of ($47,047.00) over a (72) month term in monthly payments of $200.00 for the first 6 months; $625.00 for months 7 through 18; $700.00 for months 19 through 30; $315.00 for months 31 through 42; $500.00 for months 43 through 54; $1,169.00 for months 55 through 66; $1,083.00 for months 67 through 67 commencing with the month subsequent to the Effective Date. |
| 6 | Non-Dischargeable Unsecured Claims – Citibank Student Loans $235,814.35 | N | Payment to continue in accordance with the Student Loan agreements. |

21

### 4.    Class(es) of Interest Holders

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor. If the Debtor is a corporation, entities holding preferred or common stock in the Debtor is interest holders. If the Debtor is a partnership, the interest holders include both general and limited partners. If the Debtor is an individual, the Debtor is the interest holder. The following chart identifies the Plan's treatment of the class of interest holders:

| 7 | Natalie M. Nebblett | Y | Paid to the extent available after payment of all other creditor claims |
|---|---|---|---|

## D.    Means of Effectuating the Plan

### 1.    Funding the Plan

The Plan will be funded by the income derived from future earnings.

### 2.    Post-Confirmation Management

N/A, the Debtor is an individual.

### 3.    Disbursing Agent

The Debtor, Natalie M. Nebblett ("Disbursing Agent") shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan. The Disbursing Agent shall not be compensated for such duties.

## E.   Other Provisions of the Plan

### 1.   Executory Contracts and Unexpired Leases

The Plan provides that all Executory Contracts and Unexpired leases, except for those specifically assumed by the Debtor in writing or previously assumed by Court Order, shall be deemed rejected. All proofs of claim with respect to claims arising from said rejection must be filed with the Bankruptcy Court within the earlier of (i) the date set forth for filing claims in any order of the Bankruptcy Court approving such rejection or (ii) thirty (30) days after the Confirmation Date. Any such claims, proofs of which are not filed timely, will be barred forever from assertion.

### 2.   Changes in Rates Subject to Regulatory Commission Approval

The Debtor is not subject to governmental regulatory commission approval of its rates.

### 3.   Retention of Jurisdiction

The Court will retain jurisdiction as provided in Section III. C. of the Plan.

### 4.   Procedures for Resolving Contested Claims.

The Debtor and/or the Disbursing Agent shall have sixty (60) days subsequent to confirmation to object to the allowance of claims. The Proponent anticipates filing a Motion to Expunge General Unsecured Claim No. 16 of Judith A. Sherman in the amount

of $427,000.00; filing a Motion to Reclassify and Reduce Secured
Claim No. 17 of GE Capital Corp in the amount of $470,047.47; and
filing a Motion to Reclassify the Secured Proof of Claim No. 10
of the Internal Revenue Service in the amount of $95,026.84.

### 5.   Effective Date

The Plan will become effective on the Effective Date, which
is the date on which the order of Confirmation becomes final.

### 6.   Modification

The Plan Proponent may alter, amend or modify the Plan at
any time prior to the Confirmation Date and thereafter as
provided in Section 1127 (b) of the Bankruptcy Code.


## F.   Tax Consequences of Plan

**CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN
MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN
ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.**

The following disclosure of possible tax consequences is
intended solely for the purpose of alerting readers to possible
tax issues this Plan may present to the Debtor. The Proponent
**CANNOT** and **DOES NOT** represent that the tax consequences contained
below are the only tax consequences of the Plan because the Tax
Code embodies many complicated rules which make it difficult to
state completely and accurately all the tax implications of any
action.

The following are the tax consequences that the Plan will
have on the Debtor's tax liability: N/A

**G.    Risk Factors**

The following discussion is intended to be a non-exclusive
summary of certain risks attendant upon the consummation of the
Plan. You are encouraged to supplement this summary with your
own analysis and evaluation of the Plan and Disclosure Statement, in
their entirety, and in consultation with your own advisors. Based
on the analysis of the risks summarized below, the Plan Proponent
believes that the Plan is viable and will meet all requirements
of confirmation.

**IV.**

**CONFIRMATION REQUIREMENTS AND PROCEDURES**

**PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN**

**SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON**

**CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.**

The following discussion is intended solely for the purpose
of alerting readers about basic confirmation issues, which they
may wish to consider, as well as certain deadlines for filing
claims. The proponent CANNOT and DOES NOT represent that the
discussion contained below is a complete summary of the law on
this topic.

Many requirements must be met before the Court can confirm a
Plan. Some of the requirements include that the Plan must be

proposed in good faith, that creditors or interest holders have

accepted the Plan, that the Plan pays creditors at least as much

as creditors would receive in a Chapter 7 liquidation, and that

the Plan is feasible. These requirements are not the only

requirements for confirmation.

**A.    Who May Vote or Object**

**1.    Who May Object to Confirmation of the Plan**

Any party in interest may object to the confirmation of the

Plan, but as explained below, not everyone is entitled to vote to

accept or reject the Plan.

**2.    Who May Vote to Accept/Reject the Plan**

A creditor or interest holder has a right to vote for or

against the Plan if that creditor or interest holder has a claim

that is both (1) allowed or allowed for voting purposes and (2)

classified in an impaired class.

**a.    What Is an Allowed Claim/Interest**

As noted above, a creditor or interest holder must first

have an allowed claim or interest to have the right to vote.

Generally, any proof of claim or interest will be allowed, unless

a party in interest brings a motion objecting to the claim. When

an objection to a claim or interest is filed, the creditor or

interest holder holding the claim or interest cannot vote unless

the Court, after notice and hearing, either overrules the

objection or allows the claim or interest for voting purposes.

26

**THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS November 16, 2011.**

A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

**b.   What Is an Impaired Claim/Interest**

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is impaired under the Plan. A class is impaired if the Plan alters the legal, equitable or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the plan fails to pay the members of that class 100% of their claim plus interest.

***In this case, the Proponent believes that Class 1, 4, 6, 7 and 8 creditors are impaired and that the holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.*** Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file on objection to the Plan contending that the Proponent has incorrectly characterized the class.

27

### 3.   Who is not Entitled to Vote

The following four types of claims are not entitled to vote:
(1) claims that have been disallowed; (2) claims in unimpaired
classes; (3) claims entitled to priority pursuant to Code Section
507 (a)(1), (a)(2), and (a)(8); and (4) claims in classes that do
not receive or retain any value under the Plan. Claims in
unimpaired classes are not entitled to vote because such classes
are deemed to have accepted the Plan. Claims entitled to priority
pursuant to Code Section 507(a)(1), (a)(2), and (a)(7) are not
entitled to vote because such claims are not placed in classes
and they are required to receive certain treatment specified by
the Code. Claims in classes that do not receive or retain any
value under the Plan do not vote because such classes are deemed
to have rejected the Plan. **EVEN IF YOUR CLAIM IS OF THE TYPE
DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE
CONFIRMATION OF THE PLAN.**

### 4.   Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured
claim and in part as an unsecured claim is entitled to accept or
reject a Plan in both capacities by casting one ballot for the
secured part of the claim and another ballot for the unsecured
claim.

### 5.   Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan

28

unless (1) at least one impaired class has accepted the Plan
without counting the votes of any insiders within that class, and
(2) all impaired classes have voted to accept the Plan, unless
the Plan is eligible to be confirmed by "cram down" on non-
accepting classes, as discussed later in Section (IV.A.8.).

### 6.    Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan
when more than one-half (½) in number and at least two-thirds (⅔)
in dollar amount of the allowed claims that actually voted, voted
in favor of the Plan. A class of interests is considered to have
accepted the Plan when at least two-thirds (⅔) in amount of the
allowed interest-holders of such class which actually voted,
voted to accept the Plan.

### 7.    Treatment of Nonaccepting Classes

As noted above, even if all impaired classes do not accept
the proposed Plan, the Court may nonetheless confirm the Plan if
the nonaccepting classes are treated in the manner required by
the Code. The process by which nonaccepting classes are forced to
be bound by the terms of the Plan is commonly referred to as
"cram down". The Code allows the Plan to be "crammed down" on
nonaccepting classes of claims or interests if it meets all
consensual requirements except the voting requirements of Section
1129(a)(8) and if the plan does not "discriminate unfairly" and

29

is "fair and equitable" toward each impaired class that has not

voted to accept the Plan as referred to in 11 U.S.C. 1129(b) and

applicable case law.

### 8.   Request for Confirmation Despite Non-acceptance by Impaired Class(es)

The party proposing this Plan asks the Court to confirm this

Plan by cram down on impaired classes if any of the classes

provided for do not vote to accept the Plan.

### B.   Liquidation Analysis

Another confirmation requirement is the "Best Interest

Test", which requires a liquidation analysis. Under the Best

Interest Test, if a claimant or interest holder is in an impaired

class and that claimant or interest holder does not vote to

accept the Plan, then that claimant or interest holder must

receive or retain under the Plan property of a value not less

than the amount that such holder would receive or retain if the

Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's Assets are usually sold by

a Chapter 7 Trustee. Secured creditors are paid first from the

sales proceeds of properties on which the secured creditor has a

lien. Administrative claims are paid next. Next, unsecured

creditors are paid from any remaining sales proceeds, according

to their rights to priority. Unsecured creditors with the same

priority share in proportion to the amount of their allowed

claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

In order for the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the plan will receive at least as much under the Plan as such holders would receive under Chapter 7 liquidation. The Plan Proponent maintains that this requirement is met here for the following reasons:

Upon liquidation, as more specifically provided below, the allowed claims of General Unsecured Creditors will receive a lesser dividend.

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive under Chapter 7 liquidation:

**Assets**

Real Property

    Residence                              $    690,000.00

Personal Property

    2011 Nissan Pathfinder                 $     19,410.00

    2008 Volvo S80                         $     19,140.00

    Misc. Dental Equipment                 $     30,000.00

    Misc. Personal Property                $      3,385.75

Total Assets                               $    761,935.75

**Liabilities**

Secured Claims

     Mortgage on Residence                  $     936,030.55

     Auto Loan (Nissan Auto)              $      14,841.11

     Auto Loan (Ally Financial)          $      23,893.46

     GE Capital Security Agreement       $     470,047.47

Priority Claims

     Internal Revenue Service             $      95,026.84

Total Liabilities                        $   1,539,839.43

Amount available for unsecured claims
(total assets minus priority claims)        $         00.00

Total unsecured claims                 $   1,236,235.35

Estimated dividend in Chapter 7
(amount available-unsecured claims)              0.00%

### C.   Feasibility

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan, unless liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility

analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on such date. The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

The initial aspect will be satisfied by the Debtors' counsel's agreement to accept a payment plan on attorney's fees due, and/or the Debtor obtaining a loan against her retirement plans to pay such fees.

The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required payments. These payments can be made by the Debtor as substantiated by the filed Monthly Operating Reports and financial projections submitted herewith.

Accordingly, the Plan Proponent believes, on the basis of the foregoing, that the Plan is feasible.

**V.**

**EFFECT OF CONFIRMATION OF PLAN**

**A.    Discharge**

This Plan provides that upon confirmation of the Plan, Debtor shall be discharged of liability for payment of debts incurred before Confirmation, to the extent specified in 11 U.S.C. 1141. However, any liability imposed by the Plan will not be discharged. If Confirmation of this Plan does not occur, or

if, after Confirmation occurs, the Debtor elects to terminate the Plan, the Plan shall be deemed null and void. In such event, nothing contained in this Plan shall be deemed to constitute a waiver or release of any claims against the Debtor or its estate or any other persons, or to prejudice in any manner the rights of the Debtor or its estate or any person in any further proceeding involving the Debtor or its estate. The provisions of this Plan shall be binding upon Debtor, all Creditors and all Equity Interest Holders, regardless of whether such Claims or Equity Interest Holders are impaired or whether such parties accept the Plan, upon Confirmation thereof.

**B.    Re-vesting of Property in the Debtor**

Except as provided in the Plan, the Confirmation of the Plan re-vests all of the property of the estate in the Debtor.

**C.    Modification of Plan**

The Proponent may modify the Plan at any time before Confirmation. However, the Court may require a new Disclosure Statement and/or re-voting on the Plan if Proponent modifies the Plan before Confirmation.

The Proponent may also seek to modify the Plan at any time after Confirmation so long as (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modification after notice and a hearing. Proponent further reserves the right to modify treatment of any Allowed

34

Claim at any time after the Effective Date of the Plan upon the consent of the Creditor whose Allowed Claim treatment is being modified, so long as no other Creditors are materially adversely affected.

**D.     Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under 1112(b), after the Plan is confirmed, if there is a default in performance of the Plan or if cause exists under Section 1112(b). If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will re-vest in the Chapter 7 estate, and the automatic stay will be re-imposed upon the re-vested property only to the extent that relief from stay was not previously granted by the Court during this case.

Quarterly fees pursuant to 28 U.S.C. Section 1930(a)(6) continue to be payable to the office of the United States Trustee post-confirmation until such time as the case is converted, dismissed, or closed pursuant to a final decree.

/s/ *Natalie M. Nebblett*
Natalie M. Nebblett

Dated: 12/05/2011